MATHEWS *et al. v.* WILLIAMS *et al.*

BLECKLEY, C. J.—The judge did not abuse his discretion in refusing a temporary injunction and the appointment of a receiver.
SIMMONS, J., not presiding, because of sickness.   *Judgment affirmed.*
January 31, 1890.

Petition for injunction, receiver, general relief, etc. Before Judge GUSTIN.   Bibb superior court.   May term, 1889.

On January 22, 1889, Mathews *et al.*, judgment creditors of Williams and Williams & Co. (executions upon which judgments had been issued and returned unsatisfied), and other creditors, brought their petition against Williams, his wife, Williams & Co., Cabaniss (cashier of the Exchange Bank), and Westcott, alleging, in brief, as follows : Prior to and during 1886, when the greater part of plaintiffs' debts was contracted, Williams and Williams & Co. were traders.   Williams individually owned large property, real and personal, and the firm a large stock of goods.   Plaintiffs extended credit to them on the faith that they were abundantly solvent, derived from the fact that Williams owned the property mentioned, and from fraudulent statements by him as to its value and the amount of his indebtedness.   But he and his firm were then stretching their credit to its utmost limit and buying all the goods from everywhere they could, with a view to realize as much as possible in cash before their failure ; they were insolvent when they purchased plaintiffs' goods, and bought them with no intention of paying for them.   After having purchased all the goods they could, Williams gave mortgages covering all the property owned by him or his firm, and made large transfers of real estate, the deeds being recorded some time after his failure ; all with the intent to put his property out of the reach of his creditors.   In one instance land so sold has been repurchased in the name of Mrs. Williams.   The mortgages generally show on their face that they were made to obtain fresh loans and advances, and not to secure indebtedness already existing.   Williams must have realized large sums from the mortgages and transfers, but he did not apply such sums to the reduction of his other

indebtedness. The raising of this money by mortgages and sales was part of the scheme to reduce his visible assets to such a size as could be embraced within the homestead exemption allowed by law, and under color of such homestead to hinder, delay, defeat and defraud his creditors. Williams & Co. made a voluntary assignment of the firm's assets, which were already exhausted (so far as they were of a nature to be reached by creditors) in paying off preferences and liens, and no part remains for plaintiffs. On or about February 1st, 1887, Williams proceeded to have all his property set apart to his wife, under a so-called homestead exemption, her application therefor embracing a large amount of real and personal property. The order of the court setting apart such homestead was void, because the applicant failed to return, disclose or deliver the moneys which Williams possessed at the time, and which with other personal property he then and has since fraudulently concealed and kept out of the reach of all levying officers; also because the proceedings were no attempt to comply with the law regulating the setting apart of homesteads, but were grossly and fraudulently irregular and defective. Under color of seeking the homestead, the debtor only sought to tie up the property in the hands of a so-called receiver of court, so that creditors could not touch it; and after getting it so tied up, he has taken no further steps towards having it sold, but has continued to enjoy, use and possess the whole property nominally in the receiver's hands. The applicant sets out her husband's financial embarrassment, and that he has largely mortgaged his property, and prays for a homestead of $1,600 out of the equity of redemption wherein the right of a homestead had not been waived in favor of special creditors, and asks that appraisers be appointed to examine and value the property and make report showing its state as to leins, its

rental value, and how it should be set apart for the
benefit of the family; also that a receiver be appointed
to take charge of and manage the property, etc.  The
schedule attached to the application shows mortgages
on the property aggregating about $11,000, subject to
be reduced by such payments as have been made there-
on; but it does not appear anywhere in the proceedings
which of these mortgage debts contain a waiver of
homestead, nor as to what property the homestead right
was so waived.  Nor do such proceedings state the
value of the personalty, either as to the separate articles
thereof or in the aggregate; nowhere is it claimed that
the personalty alone does not exceed $1,600, and the
value of it in fact was $12,000.  No appraisers were
appointed; no inquiry was made as to the value of the
personalty, nor as to how far the homestead right had
been lost therein; nor was any evidence taken as to any
of these questions.  The ordinary issued an order to
the county surveyor to lay off a homestead in the realty,
not specifying the value of the realty to be set apart,
although a portion of the homestead sought and set
apart was in personalty; nor was any inquiry directed
by the surveyor, or by appraisers or otherwise, as to the
amount of incumbrances on the realty, or how far the
homestead right had been waived or lost.  By the sur-
veyor's sworn return the value of the realty was $5,600,
but its real value was more.  On February 23d, 1887,
the application was approved; the order of approval
recites that the return of the surveyor shows that there
is more property than the applicant is entitled to, but
that the property in the schedule is covered by mort-
gages, which after being paid " will leave little as the
equity of redemption out of which the applicant can
have the benefit of the homestead applied for"; and
therefore it is ordered that Westcott be appointed re-
ceiver to take charge of any excess of property in the

schedule, after paying off the lawful incumbrances to be disposed of as by law in such cases provided. This order was based on the *ex parte* application for homestead; no creditor was present to object, and no *caveat* was filed or heard. Plaintiffs are non-residents, and had not such length of notice as would have enabled them to object. The schedule of creditors was not full and complete, the name of one of the plaintiffs, The Foss-Schneider Brewing Company, not being embraced therein ; it had no notice of the homestead application until after the homestead was set apart. While plaintiffs have thus been prevented from enforcing their judgments, Williams has paid off the greater part of the mortgage debts, and his wife now claims the property as her own. He remains in the possession and enjoyment of all the property embraced in the homestead application. The mortgages given before the homestead by Williams, are when renewed given by his wife on the same property, and the debts are assumed by her. On January 5th, 1888, she gave a mortgage of $3,000 to Cabaniss, cashier of the Exchange Bank, on all the furniture, etc. in the Commercial hotel, which is the same property described in the mortgage of December 27th, 1886, given by Williams to the same mortgagee, which latter mortgage appears on the record as cancelled January 6th, 1888. In her homstead application Mrs. Williams makes oath that all of said property was the property of her husband ; prior to that time she never owned or claimed any property as her own, and since then has had no means of acquiring any, except with money or property given her since such time by her husband. Petitioners believe that the expenses of the hotel and bar business, and the large payments to discharge the mortgage liens, were defrayed out of the profits made by Williams as the proprietor of the Commercial hotel, and in his other busi-

ness, and in part with moneys fraudulently kept back by him out of the schedule. On January 26th, 1887, he conveyed by warranty deed, for the expressed consideration of $900.50, to Louis Sararese, three lots of the real estate in Macon; which deed was recorded August 11th, 1887; and afterwards the executrix of Sararese conveyed the same property to Mrs. Williams for $1,000, the deed being dated January 1st, 1888. The latter purchase was really made by Williams, and the title taken in his wife's name in fraud of creditors; or else was purchased with funds given her by him during his insolvency, or with proceeds or profits of their property given her by him during that time. All the land and property now claimed by her is the property of her husband, and subject to his debts; and all his transfers to his wife were made without valuable consideration, with intent to delay and defraud creditors, and as to plaintiffs are fraudulent and void. After placing their executions in the hands of the sheriff and his deputies, they often demanded that those officers levy the same on defendants' property; but these officers have refused to do so, for the reason that they know of no property of defendants subject to levy and sale, not being able to discover any not embraced in the homestead schedule and plat, which Williams claims as exempt, and the officers are afraid to levy on the same by reason of the penalties fixed by law for levying on homestead property. Thus plaintiffs are without remedy at law.

Williams and his wife made affidavits in the nature of an answer, in brief, as follows: Respondents do not know that plaintiffs have the judgments against Williams as stated in their bill, and leave them to make proof. He owes Foss, Schneider & Company nothing, and has a receipt showing a settlement between them. Each of the mortgages referred to was given for a valid

subsisting debt, in good faith, and without any intention to hinder, delay or defraud any of his creditors. He has no belief that the property would pay the mortgage debts. The hotel furniture and bar-room supplies are taxed $2,000 and would probably bring little more if any more than that sum. They were mortgaged to Cabaniss, cashier of the Exchange Bank, to secure a debt due him of $3,185.77, $800 of which has been paid. Williams made no statements or representations of the value or condition of his property to any creditor that were untrue or for the purpose of obtaining credit; nor has he ever bought any goods whatever with the intention of not paying for them. In making the assignment by the firm of Williams & Co., all property and effects were put in the schedule, to the best of Williams' knowledge and belief, he not being the active manager of the firm, but having some knowledge of its business and books. The homestead schedule included all his property and effects, to the best of his knowledge and belief. He knows of nothing that was left out. He had no money at that time to put in the schedule. He had paid out all he had honestly, in legitimate business transactions, and none was retained. The land sold to Sararese was to pay an honest debt due him for a considerable time before, and the same was thereby extinguished. After his death, his legal representative sought to sell this land in the course of administration, and as some money had been made out of the homestead property in which Mrs. Williams and children were interested, it was used in the purchase of this land, and the title taken in Mrs. Williams' name, not for the purpose of defrauding creditors, but to be used as part of the homestead for the benefit of the family. Respondents believe that this land is not subject to complainant's judgments, but if so it can be reached by levy of their executions. The mortgages on Williams' property at the time of the as-

signment amounted to about $10,000; part of the real estate was sold under a mortgage thereon at sheriff's sale, and brought $3,000, two-thirds of which went to R. L. Henry's mortgage debt, and the remainder to Cabaniss. The remaining mortgaged property which was included in the homestead is worth between $7,000 and $8,000, and the mortgages thereon amount to about $11,400; so that all the benefit William's family derives from the homestead is the use of the property. The foreclosure of the mortgages and selling of the property, if now made, would extinguish all homestead right, and leave a portion of the mortgage debt unpaid; complainants could get no part of the proceeds of such sale. None of the said mortgages were made to secure advances of money, but were made to secure a valid subsisting debt, and no money was advanced thereon; nor has any money been received by Williams on the sale of any mortgaged lots, or any lots. The application for homestead was suggested and advised by counsel as proper, under the circumstances, in order to prevent respondents from being put into the streets, and to secure such use of the hotel property as the indulgence of creditors who held the mortgages would allow. It was applied for by Mrs. Williams for herself and her four minor children, who are still minors, with another since added. Williams has no individual back debts due him; whatever was not collected long ago is worthless; such claims were returned in the homestead schedule. As the mortgage creditors have continued to be indulgent to respondents, and it was known that the sale of the property would not pay the mortgage debts, the homestead receiver was not called on to act. No party in interest appeared to deem any action by him advisable; complainants could not be benefited by forcing the property to sale, for they could not share in any proceeds thereof. All creditors had due notice of the home-

stead application ; the firm of Foss-Schneider Beer
Company was not a creditor, and not entitled to notice.
If any of complainants or their counsel were not present
at the hearing of the homestead application, it was their
own fault ; the judgment was regularly had, and remains
unappealed from. Respondents used the property
under said judgment for the benefit of the family, and
intended wrong to nobody. Williams is endeavoring
to save money, with which in connection with the mort-
gaged property he may pay his debts, and believes he
will be able to do so if not interfered with as asked for
in the bill. He submits the validity of the homestead
judgment to the decision of the court.

At the hearing before the judge in chambers, a gen-
eral demurrer by Williams and wife was considered for
the purposes of this case, together with the pleadings
above set forth, and the following evidence : Plaintiff's
introduced the oath verifying the petition for injunc-
tion; also the original homestead application of Mrs.
Williams, and the proceedings thereon ; also the execu-
tion in favor of Mathews against Williams; also the
deeds from Williams to Sararese, and from Sararese,
executrix, to Mrs. Williams, referred to in the petition ;
also the mortgages therein referred to, from Williams
to Cabaniss, cashier, and from Mrs. Williams to the
same mortgagee. Also an affidavit by Westcott, that
he has never been called on to act as receiver in the
homestead proceedings ; was never notified of his ap-
pointment as such ; never acted as such, nor took charge
of any of the property of Williams as such; and no
moneys have come into his hands as such ; and that he
has no recollection of ever hearing that he has been
named as such, prior to his talking to O'Pry, his deputy,
a few months ago. Also affidavit of the county tax-
receiver, showing that in 1885, Williams returned for
taxation $4,000 in realty, and $7,600 in merchandise

and other personalty, making the total $11,600; that
for the year 1886 he returned realty $9,000, furniture
and live-stock $2,125, making the total $11,125; that
for 1887 he returned realty $6,300, and personalty $135;
and that in 1888 he returned realty $7,300 and person-
alty $135; all the above returns being in his individual
name.    Also that in the years 1887 and 1888, he re-
turned $2,000 of furniture as " agent hotel."    The tax-
receiver swears, after having refreshed his recollection
by reference to the digests, that Williams, as agent,
made no return during any of the years stated, except
as above set forth; that Mrs. Williams made no return
during 1885 or 1886 at all, nor for the years 1887 and
1888 further than is shown above; and that the entries
on the digest are correct.    In her petition to the ordi-
nary Mrs. Williams alleges that her husband is the head
of a family consisting of petitioner and their four minor
and only children, naming them; that her husband is
embarrassed, and has mortgaged most of his property
in trying to satisfy his creditors, and refuses to apply
for the homestead exemption to which he is entitled;
that petitioner applies to have so much of his property
and effects as are unincumbered by liens to creditors,
and where the homestead exemption has not been
waived in favor of special creditors where there are
mortgage liens, set apart to the value of $1,600; that
she has attached an inventory of all the property, real
or personal, and back debts due her husband, and all
effects of every kind due or belonging to him, which she
can discover; that the homestead she asks for will have
to be derived out of the equity of redemption; and that
she has attached a schedule of his creditors and their
places of residence, as far as she has been able to as-
certain the same after due diligence.    She prays for an
order to the county surveyor to make survey, etc.; that
appraisers be appointed to examine and appraise all the

v 84-35

property and effects, and report the value thereof to the court, showing the state of the property as to liens, how and where situate, the rental value of the same, and what portion and how it should be set apart; and that a receiver be appointed, if necessary, to take charge of the same, and such orders be passed as are proper for securing to the family the benefit of the exemption applied for.   Attached is a long inventory of the furniture stated to be in rooms, presumably in the hotel and bar; also a list of hotel accounts due Williams, amounting to $345.58; also a statement of the realty owned by him; also a schedule of his creditors, in which all of the plaintiffs are comprised save the Foss-Schneider Brewing Company.   Most of these creditors are stated to be unsecured.   Five of the largest are the mortgagees. mentioned in the pleadings.   The application for homestead is sworn to by Mrs. Williams.   The county surveyor, in obedience to the order issued by the ordinary, made a plat of the real estate, and made a sworn return in which he stated that, in his opinion, the land was of the value of $5,600.   The order of the ordinary approved the application and appointed Westcott as receiver, as already set forth.

The application for injunction and receiver was refused, and the plaintiffs excepted.

STEED & WIMBERLY and HARDEMAN & DAVIS, for plaintiffs.

LANIER & ANDERSON and DESSAU & BARTLETT, for defendants.